IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GARY L. GAINES, | ) |
| | ) |
|         Plaintiff, | ) |
| | ) |
| vs. | ) Case No. CIV-09-190-JHP-SPS |
| | ) |
| CHARLES PEARSON, | ) |
| *et al.*, | ) |
| | ) |
|         Defendants. | ) |

**OPINION AND ORDER**

On May 13, 2009, Plaintiff, a federal prisoner appearing *pro se*, commenced this 42 U.S.C. § 1983 civil rights complaint (Dkt. # 1). The complaint was amended on June 1, 2009 (Dkt. # 5) and a motion to proceed *in forma pauperis* was filed (Dkt. # 6). Leave was granted, on June 8, 2009, for plaintiff to proceed *in forma pauperis*. (Dkt. # 7). On December 8, 2009, Plaintiff filed a Second Amended Complaint (Dkt. # 48). On December 18, 2009, Defendant Pearson filed an answer with a jury demand (Dkt. # 58). Thereafter, on August 19, 2011, Defendant Pearson filed a motion for summary judgment (Dkt. # 166). Plaintiff filed a response to said motion on October 17, 2011 (Dkt. # 175) and the defendant filed a reply on November 30, 2011 (Dkt. # 189). For the reasons discussed below, Defendant's motion for summary judgment is **GRANTED**.

The Court also notes that subsequent to the filing of defendant's motion for summary judgment, plaintiff has filed four additional motions, to-wit: 1) on October 17, 2011, a motion to add the United States of America as a defendant herein (Dkt. # 169) and a motion

for return of funds (Dkt. # 170); 2) on November 21, 2011, a Motion to Add an affidavit as an exhibit to his response to defendant's motion for summary judgment (Dkt. # 188); and 3) on December 22, 2011, a Motion for leave to file a "sur-reply" to the defendant's motion for summary judgment (Dkt. # 191).  Additionally, on October 26, 2011, the defendant filed a motion to strike plaintiff's witness list (Dkt. # 180).

## I.  Undisputed Factual Background[1]

Plaintiff is a federal prisoner currently incarcerated on a felony conviction for sexual assault of a child.  Plaintiff was transferred to the Muskogee County Detention Center ("MCDC") by the United States Marshals Service on May 25, 2007, at approximately 4:00 p.m. and was released from the MCDC to the United States Marshals Service in October, 2007.  When Plaintiff was booked into the MCDC, he had a week's supply of the following prescribed medications: Lovastatin 20mg, Imipram HCL 50mg, Fluoxetine 20mg, Propranolol 10mg, Aspirin 81mg, and Carbamazepin 200mg.  The prescriptions for Lovastatin 20mg, Imipram HCL 50mg, and Carbamazepin 200mg were not refillable.  The other prescriptions provided for two (2) refills each.

According to MCDC's medical records, Plaintiff's prescriptions for Imipram HCL 50mg ran out on Friday, June 1, 2007, and his prescription for Lovastatin ran out on Saturday, June 2, 2007.  When these prescriptions ran out the Physician's Assistant made the

---

[1] The following facts are either undisputed–i.e., not specifically controverted by Gaines in accordance with Local Civil Rule 56.1(c)–or are described in the light most favorable to Gaines.  Immaterial facts are omitted.

decision not to continue these medications. As a result, they were not refilled and Plaintiff did not receive these medications for the remainder of his stay at MCDC.

The medical records also reflect that while Plaintiff did not receive Propranolol 10mg on the evening of Saturday, June 2, 2007, he did receive it every other day throughout the remainder of his stay at the MCDC. Additionally, the medical records reflect that the Plaintiff received Aspirin, Fluoxetine 20 mg, and Carbamazepin 200mg every day throughout his stay at MCDC. Despite the medical records, Plaintiff asserts that he did not receive any of his medications from the evening of Friday, June 1, 2007, to the evening of Sunday, June 3, 2007. Plaintiff admits, however, that he received his medications on the evening of Sunday, June 3, 2007, and every day thereafter during the remainder of his incarceration within MCDC.

On Monday, June 4, 2007, Plaintiff submitted a Sick Call Request in which he indicated that his medical problem was "chest pains." On this same form, Plaintiff stated "lack of meds hurt me." On June 5, 2007, Plaintiff was seen by a physician's assistant who made the following comments on this Sick Call Request: "Has history of seizure disorder and history of mitral valve prolapse. He is more worried about trying to sue someone than trying to get his medical issues taken care of. This man is argumentative, beligurant (sic), and uncooperative." Additionally, the physician's assistant found Plaintiff to be "Alert, Anxious, NAD; chest clear and heart regular." An order was written to continue Plaintiff's prescriptions of Propranolol and Carbamazepin.

On July 10, 2007, Plaintiff submitted a Sick Call Request in which he indicated that his medical problem was "spots on skin (over a week)" and "upper chest pains." On July 13, 2007, Plaintiff saw the Physician's Assistant who indicated that Plaintiff had "no coughing or congestion;" that Plaintiff was "alert . . . Does not look ill at all, chest clear and heart regular." The Physician's Assistant prescribed Ranitidine 150mg and Tylenol (Acetaminophen) 325 mg (for five days) and made a follow-up appointment for the following Tuesday. Thereafter, on July 16, 2007, Plaintiff was again seen by the Physician's Assistant and the medical records indicate Plaintiff "continues to have periodic chest pain he states it is a sharp pain on both sides of his chest, no cough congestion . . . Hot liquids seem to make is worse." Additionally, the doctor indicated that Plaintiff was "alert," "conversant cooperative." The doctor prescribed Nexium 40mg for ten days and continued the prescription of Tylenol (Acetaminophen) 325mg for ten days. Plaintiff received Ranitidine from July 13, 2007 until July, 16, 2007, at which time he began receiving Nexium. Plaintiff received the Nexium from July 18, 2007 until July 28, 2007 and he received the Tylenol from July 13, 2007 until July 28, 2007.

The MCDC has an inmate grievance procedure which allows inmates to file a grievance any time they believe that they have been subjected "to abuse, harassment, abridgment of civil rights or denied [certain] privileges . . . ." Dkt. # 166-23, at p. 1. Plaintiff did not file any formal grievances pursuant to this policy with regard to any claims raised in this lawsuit.

Plaintiff indicated in his deposition that his real complaint against the Defendant is that he did not receive his heart medication, Propranolol, from Friday, June 1, 2007, until the evening of Sunday, June 3, 2007. Plaintiff is seeking $5,000,002 in compensatory and punitive damages.

## II. ANALYSIS

### A. Standard of review

1. *Summary Judgment*

The court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. *Klen v. City of Loveland, Colo.*, 661 F.3d 498, 508 (10th Cir. 2011). "However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Intern., Inc. v. First Affiliated Securities, Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The court cannot resolve material factual disputes at summary judgment based on conflicting affidavits. *Hall v. Bellmon*, 935 F.2d 106, 1111 (10th Cir. 1991). The mere existence of an alleged factual dispute, however, will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Only material factual disputes preclude summary judgment; immaterial disputes are irrelevant.

*Hall*, 935 F.2d at 1111. Similarly, affidavits must be based on personal knowledge and set forth facts that would be admissible in evidence. *Id.* Conclusory or self-serving affidavits are not sufficient. *Id.* If the evidence, viewed in the light most favorable to the nonmovant, fails to show that there exists a genuine issue of material fact, the moving party is entitled to judgment as a matter of law. *See*, *Anderson*, 477 U.S. at 250 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.") A party seeking summary judgment can meet his burden of establishing the absence of a genuine issue of material fact and entitlement to judgment as a matter of law "simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Furthermore, a party can not escape summary judgment with a "mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

    2. *Standard for Dismissal*

As indicated above, Plaintiff is proceeding *in forma pauperis* in this action. Pursuant to the Prison Litigation Reform Act of 1996 ("PLRA"), the court is required to dismiss a complaint or any portion of the complaint if the complaint is frivolous or malicious or fails to state a claim on which relief may be granted. *See*, 28 U.S.C. § 1915(e)(2)(B). A court may dismiss a complaint of a prisoner proceeding *in forma pauperis* if the complaint lacks an arguable basis in law or fact. *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). While *pro se* complaints are held to less stringent standards than pleadings drafted by lawyers and

the court must construe them liberally, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the court should not assume the role of advocate and, therefore, should dismiss claims which are supported by vague and conclusory allegations. *See*, *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) and *Hall*, 935 F.2d at 1110. Additionally, the PLRA requires that an inmate exhaust his administrative remedies before bringing a lawsuit under 42 U.S.C. § 1983 based upon or relating to prison conditions. 42 U.S.C. § 1997e(a).

**B. Eighth Amendment Claims**

Plaintiff's complaint alleges he was subjected to cruel and unusual punishment in the form of deliberate indifference to his serious medical needs because he missed his medications, in particular his heart medication Propranolol from June 2 - 3, 2007.[2] He alleges he suffered a heart attack on June 2, 2007 as a result of missing his medications.

In order to state a claim under § 1983, a plaintiff must 1) allege a violation of a right secured by the Constitution or laws of the United States and 2) demonstrate that the alleged deprivation was committed by a person acting under color of law. *Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009). The Eighth Amendment's prohibition against cruel and unusual punishment imposes minimum requirements on prison officials in the treatment received by inmates. Not every injury suffered by a prisoner at the hands of another, however, translates into constitutional liability for prison officials. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In order for a violation of a convicted prisoner's Eighth Amendment

---

[2] In his deposition, plaintiff indicated that he didn't receive his medications on the evening of Friday, June 1, 2007 until the evening of Sunday, June 3, 2007. Dkt. # 166-10, at pp. 20-22.

rights due to inadequate medical care, the prisoner "must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs." *Wilson v. Seiter*, 501 U.S. 294, 297-299 (1991). *See also*, *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). An Eighth Amendment claim has both an objective and subjective component. *Farmer*, *supra*. The objective component requires proof that the condition was "sufficiently serious." *Id*. To meet the objective component, "extreme deprivations are required . . . ." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The subjective component is met by a prison official who is deliberately indifferent to an inmate's health or safety. *Wilson v. Seiter*, 501 U.S. at 297. "[A]llegations of 'inadvertent failure to provide adequate medical care,' or of a 'negligent . . . diagnos[is],' simply fail to establish the requisite culpable state of mind." *Id.* (citations omitted) Furthermore,

> . . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment.

*Estelle v. Gamble*, 429 U.S. at 106.

To show deliberate indifference to his serious medical needs the Plaintiff must demonstrate that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239

F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). "Medical records of sick calls, examinations, diagnoses and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).

As previously indicated, Plaintiff alleges he missed his medications for, at most, two full days. To the extent that Plaintiff is attempting to assert that the Defendant was negligent for mistakenly not having some of his prescriptions refilled before they ran out, allegations of medical malpractice or negligence do not provide a basis for a constitutional civil rights violation. *Estelle*, 429 U.S. at 106.

Delay in medical care will result in an Eighth Amendment violation only if there has been deliberate indifference which results in substantial harm. *Easter v. Powell*, 457 F.3d 459, 463 (5th Cir. 2006). Plaintiff must produce some admissible evidence that he was substantially harmed. In this case, Plaintiff provides only a conclusory allegation that he suffered a heart attack as a result of missing his heart medication. According to the medical records, Plaintiff saw a Physician's Assistant on June 5, 2007, one day after Plaintiff submitted a sick call request and his heartbeat was regular and his chest was clear. Thus, Plaintiff has failed to prove that he sustained any harm from missing his medications for a short period of time on one weekend of his stay within the MCDC.[3] Accordingly, he has

---

[3]Defendant attaches a letter from Dr. William Gillock which indicates that missing the Propranolol over the weekend had no adverse effect on Plaintiff. Dkt. # 166-15. This letter, however, is not in affidavit form. As a result, the Court does not rely on it. *See*, F.R.Civ.Pr. 56(e). Rather, the Court relies on the lack of an affidavit or other supporting documentation from Plaintiff establishing that he, in fact, sustained any substantial harm from missing, at most, two days of his heart medication. *See*, Dkt. # 166-10, at p. 25.

failed to prove that Defendant Pearson or any other jail employee acted with deliberate indifference to a serious medical need. Finding no genuine issue of material fact as to the adequacy of the medical care provided to Plaintiff, the court concludes that the Defendant is entitled to judgment as a matter of law.

## C. Failure to Exhaust Administrative Remedies

Plaintiff has not provided any evidence to establish that he filed any grievances regarding his missed doses of medication in compliance with the MCDC's Inmate Grievance Procedures (Dkt. # 166-23). Rather, he admitted in his deposition that he did not file any grievances (Dkt. # 166-10, at pp. 25-26). In fact, he stated he did not think the jail had a grievance procedure. *Id*. In an effort to defeat the Defendant's affirmative defense of failure to exhaust, however, the Plaintiff submitted an "affidavit"[4] of a former inmate Judson Ozeene which states, in part:

> On or about June 2, 2007 Gary asked the nurse about his meds. and she said "she anit (sic) got nothing for him." [H]e said "He needed them for his heart." [T]he nurse left without talking to him any more. [T]hat afternoon at PM Pill line he ask for his meds again she told him "He would have to write a greavance (sic) cause she had nothing for him." and she walked off . . .
> Gary pushed the botton (sic) and told the gaurds (sic) but they do nothing for him either. [L]atter (sic) Gary writes a greavance (sic) an (sic) call (sic) his mom trying to get help, We ask Marshalls (sic) be called too, for Gary he look really bad now he's all red, out of breath an (sic) I ask if he was Ok an (sic)  he said "no" I run an (sic) push the botten (sic) an (sic) the sheriff come in an (sic) yell at him . . . . . .

Dkt. # 188.

---

[4]Title 28 U.S.C. § 1746 authorizes "unsworn declarations under penalty of perjury." While Mr. Ozeene's declaration does not strictly comply with the statutory language, in liberally construing Plaintiff's pleadings, this court has considered this declaration.

To the extent that Plaintiff admitted he did not file a "formal grievance," this Court finds this affidavit is insufficient to defeat the Defendant's affirmative defense of failure to exhaust. Thus, even if Plaintiff had plead sufficient facts to establish a violation of his Eighth Amendment rights, his lawsuit would still have to be dismissed for failure to exhaust his administrative remedies. 42 U.S.C. § 1997e(a).

**D. Conspiracy to violate civil rights**

Plaintiff also asserts there was a conspiracy in preventing him from receiving these medications in retaliation for bringing an earlier suit against staff at the MCDC. "Allegations of conspiracy may . . . . form the basis of a § 1983 claim." *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998). "However, a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants," and "[c]onclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." *Id.* Further, "a deprivation of a constitutional right is essential to proceed under a § 1983 conspiracy claim." *Snell v. Tunnell*, 920 F.2d 673, 701-02 (10th Cir. 1990). Thus, to prevail on such a claim, "a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights. . . ." *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990). While it is true that in February of 2006, Plaintiff filed a similar civil rights lawsuit in this court against MCDC and the United States Marshal Service, Case No. Civ-06-83-SH, alleging that he had been denied his heart medication for two days while in custody of MCDC in 2002,[5] Plaintiff

---

[5] The previous suit was dismissed for lack of subject matter jurisdiction since it was barred by the statute of limitations.

has failed to plead facts sufficient to establish an agreement between anyone to violate his civil rights. Additionally, as indicated previously, Plaintiff has failed to establish that any violation of his constitutional rights actually occurred.

**E. Retaliation for filing previous civil rights suits**

Further, Plaintiff claims that the Defendant ordered the denial of his medications in retaliation for Plaintiff's prior civil rights lawsuit against him. "[P]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights . . . . [However,] [a]n inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of a prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1263-1264 (10th Cir. 2006) (quoting *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (quotations omitted) (emphasis in original). Moreover, an inmate claiming unconstitutional retaliation "must prove that 'but for' the retaliatory motive, the incidents to which he refers . . . . would not have taken place." *Peterson*, 149 F.3d at 1144.

Plaintiff's amended complaint alleges that the "staff at MCDC" asked him "about [his prior law]suit personally and made comints (sic) about it to the guys in the cell with me and told them "he is going to lay lay (sic) in there' meaning me not getting medical care or my medicine." Dkt. # 48, at p. 8. Additionally, Plaintiff submits an affidavit from Judson Ozenne which states, in part:

> . . . . .I run an (sic) push the botten (sic) an (sic) the sheriff come in an (sic) yell (sic) at him
> "To leave them alone or he lock him up."
> An (sic) leave him on the floor there, an (sic) we try to get him to help Gary then an (sic)

> He say,
> "Hes (sic) got a lawsuit on my jail he don't get nothing!"
> an (sic) latter the next day all of us think Gary is gonna die an (sic) we all look in there an (sic) he be blue, red, back an (sic) forth holding his chest an (sic) we think if he die we will be Blamed, so we push botton (sic) an (sic) they no help him untill (sic) the PM pill line I go an (sic) I go an (sic) get Gary an (sic) help him to the Pill line nurse an (sic) she helped him right then.

In his deposition, Plaintiff stated that the Defendant Pearson came into his cell on either Saturday night, Sunday or perhaps on Monday and the following occurred:

> [The sheriff] came to the door, opened the cell of our door and was discussing with the C.O. -- with the guards there about how I had a lawsuit on his jail and that I did not have nothing coming from him, and he made that statement in front of the other guys inside the unit there also, on that cell when he was in there.

Dkt. # 166-10, at p. 33.  Plaintiff admits he does not know if the Sheriff made these statements before or after the jail medical staff began dispensing his heart medication, Propranolol, again.  *Id*., at p. 33-34.

Although the Defendant had filed a prior civil rights lawsuit against MCDC, Plaintiff's allegations of retaliation are simply not supported by the facts.  At the time that Defendant Pearson would have made these statements, Plaintiff's prior civil rights lawsuit against MCDC had been dismissed and Defendant Pearson was not yet named as a defendant in that lawsuit.[6]  Consequently, Defendant's statement, even if true, could not have been motivated by the prior lawsuit because there was nothing pending at the time of the alleged comments.  Furthermore, it appears that the Plaintiff either received his medication shortly

---

[6]On July 17, 2006, an order was entered dismissing MCDC. Dkt. # 166-3. Defendant Pearson was subsequently added as a defendant when plaintiff filed an amended complaint on December 10, 2007. Dkt. # 166-4.

13

after the sheriff's visit to his cell (if sheriff came to cell on Saturday night or Sunday) or had already received his medications at the time the statements were made (if sheriff came to cell on Monday). A review of these facts, in the light most favorable to the plaintiff, simply does not state a cause of action against Defendant Pearson for retaliation.

### F.  Motion to Add Defendant

Additionally, Plaintiff requests leave to add the United States of America as a defendant (Dkt. # 169). This Court previously ruled on a motion to dismiss several named federal agencies, finding that Plaintiff had not properly complied with the Federal Tort Claims Act and had not identified any individual who was personally involved in the violation of his constitutional rights, and therefore, had not stated a claim under *Bivens* or under § 1983 in relation to any federal agency. *See*, Dkt. # 123. For the reasons stated therein, this Court finds Plaintiff's Motion to add the United States as a defendant (Dkt. # 169) is **DENIED**.

### G.  Motion for Return of Funds

Plaintiff claims in this motion that MCDC withheld $50 from his inmate account when he was incarcerated in 2007 and he wants this Court to order that the money be returned to him and applied towards his filing fee. (Dkt. # 170). The plaintiff cites and this Court knows of no authority authorizing the requested relief. Therefore, plaintiff's motion (Dkt. # 170) is **DENIED**.

### H.  Motion to Add an affidavit

14

In ruling on the defendant's motion for summary judgment, this Court has considered the affidavit submitted by plaintiff. Accordingly, plaintiff's Motion to Add an affidavit (Dkt. # 188) is **GRANTED**.

### I. Motion for Leave to File a Sur-Reply

Plaintiff had a full and fair opportunity to respond to the Defendant's Motion for Summary Judgment. *See*, Dkt. # 175. Accordingly, this Court **DENIES** plaintiff's motion for leave to file a sur-reply (Dkt. # 191).

### J. Defendant's Motion to Strike Plaintiff's Witness List

Based upon the rulings herein, this Court **DENIES** defendant's motion to strike plaintiff's witness list (Dkt. # 180) as moot.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. Defendant Pearson's Motion for Summary Judgment (Dkt. # 166) is **granted** and Plaintiff's civil rights complaint (Dkt. # 48) is **dismissed** for failure to state a claim.

2. Plaintiff's Motion to add the United States as a defendant (Dkt. # 169) is **DENIED**.

3. Plaintiff's motion for return of funds (Dkt. # 170) is **DENIED**.

4. Plaintiff's Motion to Add an affidavit (Dkt. # 188) is **GRANTED**.

5. Plaintiff's motion for leave to file a sur-reply (Dkt. # 191) is **DENIED**.

6.  Defendant's motion to strike plaintiff's witness list (Dkt. # 180) is **DENIED** as moot.

7.  A separate judgment shall be entered in favor of the defendants and against plaintiff.

8.  Plaintiff remains obligated to pay in monthly installments the **$350.00** filing fee incurred in this matter.

It is so ordered on this  1st  day of March, 2012.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma